**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| IN RE: HARLEY-DAVIDSON AFTERMARKET PARTS MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 3064 |
| --- | --- |

**DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFFS' MOTION FOR TRANSFER OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Defendants Harley-Davidson Motor Company Group, LLC, Harley-Davidson Motor Company, Inc., and Harley-Davidson, Inc. (collectively, "Harley-Davidson") respectfully submit this Memorandum in Response to the motion filed by certain Plaintiffs seeking transfer and centralization of eight Related Actions all asserting claims related to Harley-Davidson's alleged warranty language and policies. Harley-Davidson agrees with Plaintiffs that centralization is appropriate, but for the reasons set forth below, respectfully requests that the cases be transferred to either the Northern District of Illinois (Plaintiffs' alternative proposed venue), or the Eastern District of Wisconsin, where all Harley-Davidson entities have their principal place of business. Both of these districts are far more centrally located and convenient, and less congested, than Plaintiffs' first proposed transferee district, the Northern District of California.

## BACKGROUND

This matter involves eight putative class actions ("the Related Actions") pending in eight different federal jurisdictions around the country, all of which allege that one or more Harley-Davidson entities engaged in an unlawful "tying arrangement" by conditioning the continued

validity of a limited warranty on the use of only authorized repair services and/or replacement parts.[1]

The Related Actions are as follows (also set forth on the Schedule of Actions, Ex. A):

1. *Koller v. Harley-Davidson Motor Company Group, LLC*, Case No. 3:22-cv-04534-LB, Northern District of California (filed August 5, 2022);

2. *Assise v. Harley-Davidson, Inc.*, Case No. 1:22-cv-06068, Northern District of Illinois (originally filed on August 9, 2022 in the Eastern District of Wisconsin; dismissed and re-filed on November 3, 2022 in the Northern District of Illinois);[2]

3. *Wagner v. Harley-Davidson Motor Company Group, LLC*, Case No. 2:22-cv-01912-GMS, District of Arizona (originally filed on August 15, 2022 in the Eastern District of Wisconsin; dismissed and re-filed on November 9, 2022 in the District of Arizona);

4. *Billings v. Harley-Davidson Motor Company Group, LLC*, Case No. 1:22-cv-11747, District of Massachusetts (filed October 13, 2022);

5. *Weaver v. Harley-Davidson Motor Company Group, LLC*, Case No. 1:22-cv-01142-GTS-TWD, Northern District of New York (filed November 2, 2022);

6. *Perry v. Harley-Davidson Motor Company Group, LLC*, Case No. 22-cv-02920, District of Minnesota (filed November 16, 2022);

---

[1] By submitting this response, Harley-Davidson does not waive any defenses, including any related to personal jurisdiction. *See In re Mobile Telecomms. Techs., LLC*, 243 F. Supp. 3d 545, 551-52 (D. Del. 2017) (rejecting argument that defendant had waived personal jurisdiction argument by seeking transfer and centralization into MDL).

[2] Plaintiffs' Motion for Transfer fails to mention that both the *Assise* and *Wagner* cases were originally filed in the Eastern District of Wisconsin in August 2022 and were assigned to the Hon. Brett H. Ludwig (Case Nos. 22-cv-913 and 22-cv-936, respectively). In September 2022, Harley-Davidson's counsel informed the *Koller* Plaintiffs' counsel that Harley-Davidson intended to seek to transfer that action from the Northern District of California to the Eastern District of Wisconsin. *See* Ex. B, Correspondence. Shortly thereafter, both *Assise* and *Wagner* were voluntarily dismissed and refiled in different jurisdictions.

7. *Hutley v. Harley-Davidson Motor Company Group, LLC*, Case No. 1:22-cv-00902, Western District of New York (filed November 21, 2022); and

8. *Heymer v. Harley-Davidson Motor Company Group, LLC*, Case No. 5:22-cv-02085, Central District of California (filed November 23, 2022).[3]

Plaintiffs in all of the Related Actions claim that the conduct of one or more Harley-Davidson entities violated the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 262301-2312, among other statutes. Plaintiffs in *Koller*, *Billings, Weaver*, *Wagner*, and *Heymer* assert various state-law claims including fraud and unjust enrichment as well as a claim for violation of Magnuson-Moss, while Plaintiffs in *Assise*, *Perry* and *Hutley* assert antitrust claims under federal and/or state laws. All Plaintiffs seek to represent overlapping nationwide classes and state subclasses consisting of purchasers of various Harley-Davidson products, and all Plaintiffs seek relief including recovery of monies they claim they overpaid for Harley-Davidson products as a result of the allegedly unlawful "tying arrangement." Plaintiffs are represented by counsel from twelve different law firms, with overlapping representation in some cases but not others.

All of the cases are in their preliminary stages. Six of the eight cases were filed in November 2022, and only one—the *Koller* case—was filed before October 2022. The parties have jointly requested that five of the cases be stayed pending resolution of proceedings before this Panel,[4] and even the *Koller* case—the only case in which a responsive pleading has been filed—has essentially not progressed beyond the pleading stage. While the *Koller* Plaintiffs did serve one set of written discovery requests in October 2022, Harley-Davidson's counsel proposed that those

[3] The *Heymer* action has not yet been served on Harley-Davidson Motor Company Group, LLC.

[4] Stipulated stay orders have been entered in *Assise*, *Hutley*, *Billings*, and *Weaver* and agreed upon in *Perry*. The *Wagner* court entered an order staying proceedings for 90 days or until the motion to transfer is resolved by this Panel, whichever period is shorter.

Plaintiffs coordinate with Plaintiffs in the Related Cases to avoid duplicative discovery requests, and the *Koller* Plaintiffs ultimately agreed that Harley-Davidson need not respond to the discovery requests until after these proceedings have concluded. Also in October 2022, Harley-Davidson filed a motion to transfer the *Koller* litigation to the Eastern District of Wisconsin under 28 U.S.C. § 1404(a). Plaintiffs opposed the motion, and the motion was subsequently withdrawn after Plaintiffs commenced these proceedings before the Panel.

## ARGUMENT

### I. THE RELATED ACTIONS SATISFY THE REQUIREMENTS FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407.

The Related Actions should be transferred and centralized for pretrial proceedings under 28 U.S.C. § 1407(a). The purpose of pretrial centralization is to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION, FOURTH § 20.131 (2018). Section 1407(a) vests broad discretion in the Panel and allows for transfer and centralization of two or more civil cases pending in different districts if the cases involve "one or more common questions of fact" and the Panel determines that transfer would "be for the convenience of parties and witnesses" and would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Related Actions satisfy each of these requirements.

#### A. The Related Actions Involve Common Allegations of Fact.

Centralization is appropriate here because the Related Actions all involve factual issues arising from common (and in some cases, identical) allegations that one or more Harley-Davidson entities improperly conditioned the continued validity of a new motorcycle limited warranty on use of authorized repair services and/or replacement parts. *Compare, e.g.*, *Koller* Complaint at ¶ 1

(alleging that Harley-Davidson's warranty terms "condition the continued validity of the warranty on the use of only an authorized repair service and/or authorized replacement parts," and that such "[t]ying arrangements . . . violate state and federal law") *with Billings* Complaint at ¶ 1 (identical language) and *Assise* Complaint at ¶1 (alleging that "Harley-Davidson used its warranty to try to force Harley owners to use its own parts . . . . in plain contravention of law, including the Magnuson-Moss Warranty Act."). *See also Koller* Complaint at ¶¶ 2-3 (claiming that "Defendant's authorized dealers provide service at a price premium compared to the cost of independent service. And Defendant's authorized parts are sold at a price premium compared to the cost of non-Harley-Davidson (generic) parts and supplies" and as a result of the alleged "tying arrangement," consumers "were unlawfully forced to pay for the more expensive repairs, maintenance, and parts for their motorcycle from authorized Harley-Davidson dealers") and *Assise* Complaint at ¶ 5 (alleging that "[b]ecause Harley-Davidson illegally tied its motorcycles and, specifically, the factory warranties that go with them to its parts, Harley-Davidson's parts have been overpriced, forcing the company's loyal following to pay this cost, which they should not have.").

Because all claims in the Related Actions arise from common allegations relating to the alleged conditioning of the continued validity of Harley-Davidson new motorcycle limited warranties to use of authorized repair service and/or replacement parts, centralization is appropriate. *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (centralizing cases that all "share common factual allegations concerning the conduct" of the defendants). And because all claims in the Related Actions are based on this same alleged course of conduct, it is not significant that some of the Complaints assert different legal claims from others. *See In re Oxycontin Antitrust Litig.*, 542 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008) (transferring and centralizing action pleading claims under state statutory

and common law with actions asserting antitrust claims where all actions arose from alleged anticompetitive conduct of defendants, and holding that "the presence of additional or differing legal theories is not significant when the actions still arise from a common factual core"); *In re EpiPen Mktg.*, 268 F. Supp. 3d 1356, 1359 (J.P.M.L. 2017) (transferring and centralizing action brought by competitor asserting claims under the Sherman Act with actions brought on behalf of product purchasers who asserted claims for violation of federal and state antitrust laws as well as state consumer protection laws, where all actions alleged anticompetitive conduct or unfair methods of competition with respect to the EpiPen). Nor is it significant that litigation of these actions may ultimately involve some individual factual issues, including, for example, Plaintiffs' knowledge and understanding of the warranty language and policies at issue, and Plaintiffs' alleged reliance. *See In re AT&T Corp. Secs. Litig.*, 2001 U.S. Dist. LEXIS 5233, at *3 (J.P.M.L. Apr. 19, 2001) ("Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer.").[5]

Accordingly, the Related Actions contain sufficient common factual allegations to satisfy the requirements of Section 1407(a).

### B. Centralization Will Promote the Just and Efficient Conduct of the Related Actions And Will Be More Convenient For The Parties And Witnesses.

Creating an MDL is especially appropriate here because the actions seek overlapping classes of consumers who purchased products from one or more Harley-Davidson entity. *See, e.g.*, *Koller* Complaint at ¶ 55 (seeking to represent class of "[a]ll natural persons who purchased a

[5] While the presence of common factual allegations in the Complaints justifies centralization, it does not mean that Plaintiffs will ultimately be able to satisfy the requirements for class certification. *See* MULTIDISTRICT LITIG. MANUAL § 5:11 (2017) ("Transfer of multiple actions under 28 U.S.C.A. § 1407 for coordinated or consolidated pretrial proceedings is significantly different from certification of an action or actions to proceed as a class under Fed R. Civ. P. 23.").

Harley-Davidson motorcycle" other than for resale); *Billings* Complaint at ¶ 44 (seeking to represent class "defined as all purchasers of Harley-Davidson branded products in the United States with warranty provisions that prohibits [sic] self-repair and/or the use of unauthorized parts," excluding persons who purchased for resale); *Assise* Complaint at ¶ 54 (seeking to represent "Federal Injunctive Class" defined as "All United States owners of a Harley-Davidson roadgoing motorcycle under factory warranty who purchased Compatible Parts from August 1, 2018 through the present"); *Perry* Complaint ¶ 48 (identical class definition); *Assise* Complaint ¶¶ 89-90, (seeking to represent various "State Indirect Purchaser Damage Class[es]" defined as "All United States owners of Harley-Davidson roadgoing motorcycle [sic] under factory warranty who indirectly purchased Harley-Davidson Compatible Parts from August 1, 2018 through the present," organized into subclasses by jurisdiction); *Perry* Complaint ¶¶ 82-84 (identical language); *Hutley* Complaint ¶ 57 (seeking to represent class defined as "All owners of Harley-Davidson roadgoing motorcycles who indirectly purchased Harley-Davidson Compatible Parts from six years before the filing of this Complaint until the anticompetitive effects of Defendant's conduct cease" in particular jurisdictions).

As the Panel has repeatedly recognized, centralization is necessary to "prevent inconsistent pretrial rulings, particularly with respect to class certification motions" where overlapping putative classes are sought in the related actions. *In re Seresto Flea & Tick Collar Mktg.*, 556 F. Supp. 3d 1380, 1381 (J.P.M.L. 2021). *See also In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (centralizing two actions seeking overlapping putative classes to "prevent inconsistent pretrial rulings"); *In re Google Play Store Simulated Casino-Style Games Litig.*, 544 F. Supp. 3d 1364, 1365 n.3 (J.P.M.L. 2021) (holding that "overlapping class certification issues" presented "complexities that warrant centralization" and that centralization

would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation).

In addition to the efficiencies gained by avoiding inconsistent pretrial rulings, centralization is necessary so the Related Actions can proceed on a single coordinated schedule, which will be far more convenient and cost effective for the parties and witnesses than if these cases proceed individually on different schedules. As the Panel has recognized, centralization offers "the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subject to duplicative discovery demands." *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014). Plaintiffs in all of the Related Actions are likely to seek discovery regarding the warranty language and warranty policies at issue, and without centralization, Harley-Davidson will likely be required to respond to multiple sets of similar, yet not entirely consistent, discovery requests, and its witnesses could be subject to multiple depositions. *See In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices & Prods. Liab. Litig.*, 466 F. Supp. 3d 1380, 1382 (J.P.M.L. 2020) (centralization warranted due in part to disputes over potentially duplicative discovery efforts). The Related Actions are also likely to involve significant expert discovery and *Daubert* motions, which will be more convenient and cost effective if handled on a centralized basis. *See id.* (citing likely expert discovery and *Daubert* motions as an additional factor supporting centralization).

The Related Actions are also in an ideal posture for centralization. Since the actions are all in their early stages, "[n]one of the actions has advanced procedurally to a point where the efficiencies of centralization will not be realized." *In re Hardieplank Fiber Cement Siding Litig.*, 867 F. Supp. 2d 1343, 1343 (J.P.M.L. 2012). Centralizing the Related Actions at this time will

maximize the benefits to the court, witnesses, and parties, and will allow Plaintiffs' counsel to coordinate their discovery efforts and share the pretrial workload. *See In re Stirling Homex Corp. Sec. Litig.*, 405 F. Supp. 314, 316 (J.P.M.L. 1975) ("[W]e are confident that Section 1407 treatment will allow the . . . plaintiffs to experience a net savings of time, effort and expenses through pooling their resources with other plaintiffs").

Informal coordination or transfer under 28 U.S.C § 1404(a) are not adequate substitutes for centralization of these cases. Harley-Davidson filed a motion to transfer in the *Koller* case and requested that those Plaintiffs coordinate discovery with Plaintiffs in the other Related Actions, but the *Koller* Plaintiffs opposed the transfer motion and did not respond to the request to coordinate discovery. Other Plaintiffs in other cases have also expressed opposition to a § 1404(a) transfer, and none have expressed any willingness to consider a transfer. Further, the Panel has recognized that in cases like these where overlapping classes are sought, centralization provides "superior coordination than could be achieved informally among counsel." *In re Fisher-Price Rock'n Play Sleeper Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1357, 1360 (J.P.M.L. 2019).

Because Section 1407(a)'s requirements are satisfied and Section 1404(a) transfer or informal coordination are not viable alternatives, the Panel should order centralization of the Related Cases.

## II. THE RELATED ACTIONS SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS, OR IN THE ALTERNATIVE, TO THE EASTERN DISTRICT OF WISCONSIN.

In identifying the appropriate transferee forum, the Panel may consider the following factors: "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and

inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2018).

While some of the factors are not relevant here,[6] the remaining factors weigh in favor of centralization of the Related Actions in the Northern District of Illinois before the Hon. Virginia Kendall, who is currently presiding over the *Assise* case. Harley-Davidson agrees with Plaintiffs that the Northern District of Illinois is an appropriate venue for centralization because "(1) it is centrally located; (2) it is a convenient forum for the other parties and witnesses; and (3) it has the resources and experience that this litigation will require." (Plaintiffs' Memorandum in Support of Motion for Transfer, ECF No. 1-1 ("Plaintiffs' Memorandum") at 7.) Of the jurisdictions with a pending Related Action, the Northern District of Illinois is by far the closest to Milwaukee, Wisconsin, which the Complaints in the Related Actions recognize is the location of the Harley-Davidson entities' principal place of business, and it is also the location where the warranties at issue were drafted and records and documents relating to approval and denial of warranty claims are located. (*See* Declaration of Kyle Bonnett, filed in *Koller v. Harley-Davidson Motor Company Group, LLC, et al.*, N.D. Cal. Case No. 4:22-cv-04534-HSG, ECF No. 27-2, at ¶¶ 7-8). Thus, not only does Illinois border Wisconsin, but the Northern District of Illinois is the jurisdiction in which a Related Action is currently pending that is closest to the "site of the occurrence" of any relevant facts concerning development, implementation and administration of the warranty and policies at issue in the Related Actions, and transferring the actions there would minimize the cost and inconvenience to Harley-Davidson witnesses whose testimony is likely to be sought in all of the Related Actions. *See In re Pilot Flying J Fuel Rebate Contract Litig.*, 11 F. Supp. 3d 1351, 1352

[6] For example, there is no district in which more than one Related Action is pending, no discovery has been completed in any of the Related Actions, and none of the Related Actions has progressed beyond very preliminary stages.

(J.P.M.L. 2014) (transferring litigation to Eastern District of Kentucky in part because of its proximity to Tennessee, where the defendant was headquartered and "where relevant documents and witnesses will be found.") *See also* Plaintiffs' Memorandum at 7 (noting that the Northern District of Illinois "is only a couple of hours away from Harley-Davidson's headquarters in Milwaukee if travelling by car; an Amtrak trip between the two cities will take roughly an hour and a half.").

The Northern District of Illinois is also centrally located in relation to the venues of the other Related Actions, which are spread across the country, and it is thus a geographically convenient location to centralize these actions. *See, e.g., In re Seresto Flea & Tick Collar Mktg.*, 556 F. Supp. at 1381 (Northern District of Illinois was an "accessible and geographically central venue" for litigation with "wide geographic distribution" of actions and relevant documents and witnesses located in Kansas City and Indianapolis); *In re Walgreens Herbal Supplements Mktg. & Sales Pracs. Litig.*, 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015) ("The Northern District of Illinois . . . provides a convenient and accessible forum for actions filed throughout the country regarding products sold nationwide."). Plaintiffs agree. *See* Plaintiffs' Memorandum at 7 (asserting that Chicago is "a well-placed venue for litigation . . . given its central location within the Midwest and the presence of one of the world's largest transportation hubs. It is possible to fly directly to Chicago from almost anywhere in the United States as it is home to two major airports and a train station.").

Further, as Plaintiffs acknowledge at pages 7-8 of their Memorandum, the Northern District of Illinois is less congested and more efficient than many federal jurisdictions, including districts in which other Related Actions are pending. The median time from filing to disposition for civil

cases in the district is only 7.2 months, which is 14th best in the nation.[7] The Northern District of Illinois also has the resources to handle this litigation, as it has more judgeships than most of the other districts in which a Related Action is pending.[8]

Harley-Davidson respectfully requests that the Panel transfer and centralize the Related Actions before the Hon. Virginia Kendall of the Northern District of Illinois, who is already presiding over the *Assise* action. Judge Kendall has been on the bench since 2006, and has handled thousands of cases during her tenure, including dozens of class actions and other actions alleging antitrust and consumer protection claims.[9] Indeed, as the Panel previously noted, Judge Kendall is "an experienced jurist" with the ability to efficiently manage an MDL. *In re Local TV Adver. Antitrust Litig*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018). And Plaintiffs agree that assignment to Judge Kendall "is compelling given her skill and experience." (Plaintiffs' Memorandum at 1 n. 2.) She is therefore a "transferee judge with the time and experience to steer this litigation on a prudent course and sitting in a district with the capacity to handle this litigation." (Plaintiffs' Memorandum at 6, quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 493 F. Supp. 2d 1365, 1367 (J.P.M.L. 2007)).

In the alternative, the Related Actions should be transferred and centralized before the Hon. Brett H. Ludwig in the United States District Court for the Eastern District of Wisconsin. Although there are no Related Actions currently pending in that jurisdiction, at least some of the Plaintiffs and their counsel have already recognized its appropriateness as a forum for these cases—two of

---

[7] *See* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited December 27, 2022).

[8] *Id.*

[9] *See* Ex. C (excerpt from CourtLink report of Judge Kendall's experience) and Ex. D (excerpt from CourtLink report of Judge Kendall's class action experience).

the earliest-filed Related Actions (*Assise* and *Wagner*) were originally filed in that jurisdiction and remained pending there for approximately two months before they were voluntarily dismissed and refiled in other jurisdictions. Since (as noted above) the Harley-Davidson entities' principal place of business is located in Milwaukee, Wisconsin, the Eastern District of Wisconsin is the jurisdiction with the most significant connection to this dispute and the district in which most witnesses and documents are located. The Eastern District of Wisconsin is also easily accessible and is centrally located among the Related Actions, which are spread out around the country and include actions pending in the District of Minnesota and Northern District of Illinois.

Also, the Eastern District of Wisconsin has a relatively low level of caseload congestion—it has only 447 pending actions per judgeship, the median time from filing to disposition for civil actions is only 9.8 months,[10] and there are currently no MDLs pending in the district.[11] And while Judge Ludwig is newer to the bench than Judge Kendall, he has already handled hundreds of cases, including antitrust and consumer protection actions and putative class actions.[12] Further, the Panel has recognized the benefit of centralizing litigation before jurists like Judge Ludwig who have "not yet had an opportunity to preside over an MDL docket." *In re Profemur Hip Implant Prods. Liab. Litig.*, 481 F. Supp. 3d 1350, 1353 (J.P.M.L. 2020). Thus, transferring the Related Actions to Judge Ludwig in the Eastern District of Wisconsin would provide an excellent opportunity to an experienced and capable judge, in a location that does not have an overloaded docket and is located near the defendants' headquarters "where relevant documents and witnesses may be found." *Id.*

---

[10] *See* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited December 27, 2022).

[11] *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-December-15-2022.pdf (last visited December 27, 2022).

[12] *See* Ex. E (excerpt from CourtLink report of Judge Ludwig's experience) and Ex. F (excerpt from CourtLink report of Judge Ludwig's class action experience).

## III. THE NORTHERN DISTRICT OF CALIFORNIA IS NOT AN APPROPRIATE JURISDICTION FOR CENTRALIZATION OF THE RELATED CASES.

Plaintiffs' proposed venue in the Northern District of California is less appropriate than either the Northern District of Illinois or the Eastern District of Wisconsin. California is the least centrally located of all of the proposed jurisdictions, and, of the proposed jurisdictions or the districts in which the Related Actions are currently pending, it is located the farthest from the Harley-Davidson entities' headquarters. As the Panel has recognized, proximity to witnesses and evidence remains a valid consideration in selecting a forum for centralization even post-pandemic. *See, e.g.*, *In re Mednax Servs.*, 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021) (transferring cases to jurisdiction in which defendants' headquarters and principal places of business were located, "thus relevant evidence and witnesses likely will be located there."); *In re Seresto, supra* (noting location of witnesses and documents in selecting transferee forum); *In re Dig. Adver. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1380 (J.P.M.L. 2021) (selecting transferee forum in part because a defendant had significant operations in the district and common evidence was located there).

Additionally, the Northern District of California is the most congested of the three proposed jurisdictions. As of June 30, 2022, there were 890 cases pending per judgeship, compared to 547 in the Northern District of Illinois, and 447 in the Eastern District of Wisconsin.[13] The median time from filing to disposition for civil cases is also longer in the Northern District of California—10.1 months compared to 7.2 months in the Northern District of Illinois and 9.8 months in the Eastern District of Wisconsin.

Nor is the Northern District of California an appropriate forum because it allegedly had "the most annual motorcycle registrations as of 2021." (Plaintiffs' Memorandum at 6.) Even if

[13] *See* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited December 27, 2022).

true, the statistic does not establish that California has more potentially impacted Harley-Davidson customers—and therefore more "probable future plaintiffs and cases"—than other states. But in any event, since California is the most populous state in the country,[14] the mere presence of the highest number of potentially impacted consumers cannot justify choosing a California district as the transferee forum. If that factor were determinative, virtually all MDLs with putative nationwide consumer classes would be transferred to jurisdictions in California.

And while it is true that the first of the Related Actions (*Koller*) was filed in the Northern District of California, that fact also does not justify its selection as transferee forum. As explained above, the *Koller* case is still in its preliminary stages—no significant motion practice has taken place, no discovery has been completed, and discovery responses are not due until these proceedings are resolved. One Plaintiff resides in the Northern District of California, but otherwise, that district "has no special connection to either the parties or the litigation's subject matter," and the litigation "could well have been filed in any of a number of jurisdictions." *In re Halftone Color Separations Patent Litig.*, 547 F. Supp. 2d 1383, 1385 (J.P.M.L. 2008). And as in *In re Halftone*, "docket conditions" in the Northern District of California "counsel against assignment of this MDL to [the first-filed] district where other appropriate districts are available to handle the litigation." *Id.*

**CONCLUSION**

Defendants Harley-Davidson Motor Company Group, LLC, Harley-Davidson Motor Company, Inc., and Harley-Davidson, Inc., respectfully request that the Panel transfer the Related Actions to the Northern District of Illinois for centralization before the Hon. Virginia Kendall, or

[14] See https://data.census.gov/table?tid=PEPPOP2021.NST_EST2021_POP&hidePreview=false (last visited December 18, 2022).

in the alternative, transfer the Related Actions to the Eastern District of Wisconsin for centralization before the Hon. Brett H. Ludwig.

Dated: December 27, 2022

Respectfully submitted,

*/s/ Howard B. Iwrey*
Howard B. Iwrey (P39635)
DYKEMA GOSSETT PLLC
39577 Woodward Ave., Ste. 300
Bloomfield Hills, MI 48304
Telephone: (248) 203-0526
Facsimile: (855) 232-1791
hiwrey@dykema.com

*Counsel for Defendants Harley-Davidson Motor Company Group, LLC, Harley-Davidson Motor Company, Inc., and Harley-Davidson, Inc.*